UNITED STATES of America

v.

Jason D. COOPER

United States of America

v.

Alton C. Craig

United States of America

v.

Randy T. Jones

United States of America

v.

Juvenile Offender

United States of America

v.

Allen K. Person

United States of America

v.

Scott A. Odom

United States of America

v.

Tabitha A. Scott

Nos. P221545 TM12, P221548 TM12, P221781 TM12, P221801 TM12, P221604 TM12, P221792 TM12, P221784 TM12.

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 14, 2003.

## ORDER

BROWN, United States Magistrate Judge.

All of these cases present a single question of law. May the United States exercise criminal jurisdiction through the regulations of the National Park Service over individuals traveling on state and county roads within the boundaries of the Natchez Trace Parkway, when such individuals are not operating their vehicles on the Natchez Trace Parkway itself.

A hearing was held on all of these cases on November 4, 2003. For the reasons stated below, the motions to dismiss for lack of jurisdiction are **DENIED**.

### Background

As an initial matter, the Government, through Maps 16, 17, and 18, established that the alleged offenses occurred while the individuals charged were within the boundaries of the Natchez Trace Parkway. It was also established through testimony that the individuals charged were not operating their vehicles on the actual Natchez Trace Parkway itself but were operating their vehicles on state or county roads, which transitioned through portions of the Natchez Trace Parkway boundaries. The individuals charged were all stopped by the Rangers for violation of park regulations involving seat belts, inoperative lights, or other regulations set forth by the C.F.Rs. governing the Natchez Trace Parkway. At the consequence of these stops, many of the defendants were charged with more serious violations, such as possession of controlled substances and driving under the influence. The only question before the Court at this point is the jurisdiction of the Rangers.

Ranger Gagnon testified that he had been a ranger in the Tennessee district for some 4 years and was familiar with the boundaries of the Natchez Trace Parkway. He stated that within the boundaries of the Parkway, and in addition to the Parkway itself, were county and state roads, as well as horse and bike trails. He testified concerning three primary areas on the Parkway which were identified on Exhibits 16, 17, and 18. An additional number of color photographs were taken of the areas depicted by these charts. The first five photographs depict the area of the Visitor Center on Pinewood Road as shown on Map 16. Photographs 6 through 13 depict the area near the intersection of Old Natchez Trace Road and Highway 7, as shown on Map 17. Photographs 14 and 15 depict the area along Keg Springs Road and New Shebass Road as shown on Map 18.

The Government further introduced various memoranda of understanding with the State of Tennessee, Williamson, Murray, and Hickman Counties (Docket Entry Nos. 19, 20, 21, and 22). The memorandum of understanding with the State of Tennessee purports to provide for concurrent jurisdiction at National Park Service units within the State of Tennessee and is dated April 23, 1997. The memorandum recites that the United States and the State of Tennessee cede to each other concurrent criminal law jurisdiction over park lands. The State of Tennessee uses T.C.A. 4–1–106 and such jurisdictions accepted by the United States, in accordance with 40

U.S.C. § 255. The United States retrocedes to the State of Tennessee criminal law enforcement jurisdiction subject to exclusive jurisdiction of the United States, in accordance with 16 U.S.C. § 1a–3, and such retrocession of jurisdiction was accepted by the State of Tennessee, in accordance with T.C.A. § 4–1–105.

Paragraph 3 provides that both the United States and the State of Tennessee shall concurrently exercise law enforcement jurisdiction over lands within the boundaries of the park lands as they exist or as they may hereafter be changed or altered.

Paragraph 4 provides that the statutory authority of the National Park Service and its regulations promulgated thereunder shall remain in full force and effect.

Paragraph 5 provides that the National Park Service shall have primary responsibility for maintaining law and order and for the protection of persons, property, and resources on park lands.

Paragraph 11 provides that the Park Service may enter into supplemental agreements with local law enforcement agencies as may be prudent.

Paragraph 13 provides that the agreement may be modified by written agreement between the parties specifying the provisions are subject to the compliance with cited statutes.

There is no indication in this document that it is in any way limited to a particular duration of time. It purports on its face to be valid until properly amended in writing by the parties. The Natchez Trace Parkway is specifically mentioned as being included within this agreement.

In addition, Exhibits 20, 21, and 22 are supplemental agreements with the Williamson County, Murray County, and Hickman County Sheriff's offices respectively. The agreements are substantially the same except for the name of the Sheriff's office. The agreements in general provide for mutual aid between the respective parties and provide that the agreements shall remain in effect for five years, subject to reaffirmation by the parties for an additional five years.

Article II.C.7. of the agreement provides that the respective parties will work in close harmony on matters relating to, among other things, public safety.

These agreements were signed on various dates in 2001 and 2002.

Ranger Gagnon testified that the Rangers had attempted to put up boundary markers along roads leading into the Natchez Trace Parkway property. A picture of a boundary marker stake is depicted in Exhibits 1 and 3, as it would appear on the highway, and Exhibit 14 as it would appear close up. The lettering on the stake simply says "U.S. Boundary NPS". Various photographs also showed other larger markings notifying individuals that they were within one mile of the Natchez Trace Parkway or were approaching a Visitor Center or similar large signage.

For the purpose of this motion, the Court will assume that a motorist proceeding by one of the sign stakes at the posted speed limit would not necessarily be able to read the sign itself. Anyone on foot or bicycle would likely be able to read such a boundary sign.

Further, for the purpose of this motion, the Court will assume that the individuals cited were in the process of transitioning through the Natchez Trace Parkway boundaries and were not and did not intend to actually enter on to the Natchez Trace Parkway proper. However, the Magistrate Judge does find that all of the individuals were initially seen committing the alleged offenses while within the boundaries of the Natchez Trace Parkway.

■ The defendants introduced several exhibits attempting to show that the defendants would not necessarily know that they were within the boundaries of the Natchez Trace Parkway. For example, a map of the Natchez Trace Parkway does not delineate the boundaries of the Parkway (Defense Exhibit A). Additionally, the defendants argue that there is no valid agreement between the State of Tennessee and the United States, pointing out a letter dated June 3, 1997, from the Chief Ranger Activities Division in Washington, D.C. concerning concurrent jurisdiction (Defense Exhibit B). This cover memorandum transmits the agreement subsequently signed to the various Park superintendents for execution (Docket Entry No. 19). The memorandum refers to the fact that the agreement is effective April 23, 1997, the date on which the Governor of the State of Tennessee signed it, and is good for five years. It further states that the agreement is not enforceable in a particular park until it is filed with the appropriate county.

During the course of the hearing it appeared that the agreement was not filed with the counties but has subsequently been filed with the Secretary of State. Ranger Cyr testified that he personally went with another Ranger to file the document with the Tennessee Secretary of State on February 7, 2000.

The defendants, based on this memorandum, make the logical argument that the agreement expired five years after April 23, 1997, and thus there was no agreement allowing concurrent jurisdiction at the time of these offenses.

The Government offered no explanation as to why this memorandum would have been sent out, except that it had to be wrong. The Government did argue that the memorandum was in full force and effect, since the laws upon which the agreement was based and the agreement

itself do not have any five-year limitation, and in fact expressly provide that the agreement may only be amended in writing.

The Magistrate Judge believes that this argument is correct. The agreement speaks for itself and the Magistrate Judge does not believe that a memorandum from the Park Service can change the actual written agreement. It may well be the memorandum was meant to apply to the memorandum of understanding with the counties and not the agreement with the state. Despite the sloppiness with which the agreement was apparently handled, as depicted by the cover memorandum and by the failure of the Government to file the document for some three years with the Secretary of State, nevertheless, the agreement is signed and the Magistrate Judge is satisfied it was in full force and effect at the time each of the citations in these cases was issued.

Accordingly, the Magistrate Judge finds that the United States and the State of Tennessee exercise concurrent jurisdiction over the lands within the Natchez Trace Parkway boundaries.

■ The citations for which the individuals were initially stopped involving seat belts, license tag, lights, and stop sign violations, are all violations of both state laws and Park regulations. Accordingly, the Magistrate Judge does not believe that the fact an individual defendant may not have realized he was within the boundaries of the Natchez Trace Parkway has any particular effect. Were this a case where an individual was cited for riding a bicycle along a state road within the park boundary, in accordance with state law, but there was a park regulation prohibiting bicycles within the park boundaries, a more difficult question would be posed. Certainly that could raise significant issues of due process and notice as applied to the

bicyclist. The facts of these cases, however, are substantially different. All of the defendants were cited for acts which would be violations of both state law and park regulations. Thus, there is no risk of unfairness or surprise to a defendant for being so stopped.

 The next issue is whether the Park Service regulations in effect can be applied to the state roads that run through the Park boundaries. The Magistrate Judge believes that the Government has correctly cited the law in this case, particularly in their supplemental memorandum in support of federal jurisdiction filed October 30, 2003. The case of *Free Enterprise Canoe Renters Assn. of Missouri v. Watt,* 711 F.2d 852 (8th Cir.1983) appears to be the closest case on point to this matter. While recognizing that this is not a Sixth Circuit case, nevertheless, it is a case by a Court of Appeals dealing with an issue almost identical to the one in question here. The defendants in the *Free Enterprise* case were cited for violation of regulations occurring on county roads within the Ozark National Scenic Riverways (ONSR). They upheld convictions even though the defendants may never have entered fully federally owned property. The roads in the ONSR were variously owned by state, county, and federal government. The Court upheld the application of the Park regulations as applied to the defendants.

The Magistrate Judge also believes that the Government's original memorandum of law in support of federal jurisdiction filed September 30, 2003, also correctly sets out the law that the regulations in question were validly enacted by the National Park Service and published in 36 C.F.R. In all of the cases the Magistrate Judge finds that the defendants were observed committing alleged violations within the Park boundaries. The fact that one or more of the defendants may have been physically stopped after exiting the Park boundaries does not change the fact that he was observed by the Ranger, allegedly committing a violation within the Park boundaries. In all cases, the stops were made immediately after the violation was observed. The case law seems well settled that a violation does not evaporate simply because the defendant drives outside the jurisdiction.

Accordingly, the motions to dismiss for lack of jurisdiction are **DENIED**. These matters are set for disposition or trial at 1:30 p.m. on Friday, December 5, 2003, 816 S. Garden Street, U.S. Post Office Building, Columbia, Tennessee.

It is so **ORDERED.**